To: Ms. Katie D. Tucker Executive Director Department of Revenue
QUESTION:
Is the Department of Revenue responsible for auditing the Local Option Tourist Development Tax and the Convention Development Tax in counties which have adopted an ordinance providing for the collection and administration of such taxes on a local basis?
SUMMARY:
The Department of Revenue performs certain audits pursuant to Part I, Ch. 212, F.S. I cannot conclude that s. 125.0104(10), F.S., or s. 212.0305(5), F.S., which authorize counties to provide for the local administration of the Local Option Tourist Development Tax and the Convention Development Tax, relieve the department of its responsibility to perform audits of the taxes imposed therein.
LOCAL OPTION TOURIST DEVELOPMENT TAX
Section 125.0104, F.S., the "Local Option Tourist Development Act"[1]
authorizes any county in Florida to levy and impose a tax for the privilege of renting, leasing or letting for consideration "living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less . . ." unless such activities are exempt according to the provisions of Ch. 212, F.S.[2]
The Tourist Development Tax is charged by the person receiving the consideration for the lease or rental and is to be collected from the lessee, tenant or customer at the time the consideration for the lease or rental is paid.[3] Pursuant to s. 125.0104(3)(g), F.S., "[t]he person receiving the consideration for such rental or lease shall receive, account for, and remit the tax to the Department of Revenue at the time and in the manner provided for persons who collect and remit taxes under s. 212.03."
The Department of Revenue is required by the act to "keep records showing the amount of taxes collected, which records shall also include records disclosing the amount of taxes collected for and from each county in which the tax authorized by this section is applicable."[4] The department is authorized to deduct the costs of administration of s. 125.0104, F.S., from the collections of the tax and the remainder shall be paid and returned monthly to the county collecting the tax for use by the county.[5] The statute requires that a county tourist development trust fund be established prior to receipt of such funds and that these moneys be used as provided for in s. 125.0104, F.S.[6]
Pursuant to s. 125.0104(10), F.S. (created by s. 1, Ch. 87-175, Laws of Florida), which provides for local administration of the tax:
 (a) A county levying a tax under the provisions of this section may be exempt from the requirements of this section that the tax collected by remitted to the Department of Revenue before being returned to the county, and that such tax be administered according to the provisions of part I of chapter 212, if the county adopts an ordinance providing for the collection and administration of the tax on a local basis.
 (b) The ordinance shall include provision for, but need not be limited to:
 1. Initial collection of the tax to be made in the same manner as the tax imposed under part I of chapter 212.
 2. Designation of the local official to whom the tax shall be remitted, and that official's powers and duties with respect thereto. Tax revenues may be used only in accordance with the provisions of this section.
 3. Requirements respecting the keeping of appropriate books, records, and accounts by those responsible for collecting and administering the tax.
 4. Provision for payment of a dealer's credit as required under part I of chapter 212.
 5. A portion of the tax collected may be retained by the county for costs of administration, but such portion shall not exceed 3 percent of collections.
No definition of the term "administered" as it is to be used in s.125.0104, F.S., is contained in the act nor is the issue of auditing these revenues specifically addressed.[7]
An examination of the legislative history of the enactment of s. 1, Ch. 87-175, Laws of Florida, reveals that the Legislature intended that a county is to "keep the money at home" and that the "county collects, the county controls, and the county owns" such funds.[8] However, I can find no evidence that the matter of responsibility for auditing these tax revenues was considered by the Legislature prior to the enactment of s. 125.0104(10), F.S.
Section 212.13(2), F.S. (contained in Part I, Ch. 212, F.S.), requires that the specified "dealers" maintain certain books and records and permit the Department of Revenue to examine or audit those records at all reasonable hours.[9] Each dealer is required to
 keep for a period of 3 years a complete record of tangible personal property or services . . . leased or rented by said dealer, together with . . . other pertinent records and papers as may be required by the department for the reasonable administration of this chapter; and all such records which are located or maintained in this state shall be open for inspection by the department at all reasonable hours at such dealer's store, sales office, general office, warehouse, or place of business located in this state. . . .
While s. 125.0104(10), F.S., authorizes a county to exempt administration of the Local Option Tourist Development Tax from Part I, Ch. 212, F.S., I cannot conclude that the Department of Revenue is relieved by this statute from its responsibility to perform audits of such funds pursuant to Part I, Ch. 212, F.S.
CONVENTION DEVELOPMENT TAX
Section 212.0305, F.S., the "Convention Development Tax Act,"[10]
authorizes a county to impose a convention development tax on transient rentals.[11] The tax
 shall apply to the amount of any payment made by any person to rent, lease, or use for a period of 6 months or less any living quarters or accommodations in a hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, tourist or trailer camp, mobile home park, recreational vehicle park, or condominium. . . .[12]
The tax is to be charged by the person receiving the consideration for the lease or rental and is to be collected by the lessee, tenant, or customer when the consideration for the lease or rental is paid.[13] Pursuant to s. 212.0305(3)(c), F.S.:
 The person receiving the consideration for such rental or lease shall receive, account for, and remit the tax to the department. . . . The same duties and privileges imposed by this part upon dealers in tangible property respecting the collection and remission of tax; the making of returns; the keeping of books, records, and accounts; and compliance with the rules of the department in the administration of this part apply to and are binding upon all persons who are subject to the provisions of this section. . . .
Section 212.0305(3)(f), F.S., authorizes the Department of Revenue to promulgate rules and regulations to effectuate the purposes of the act and to "establish audit procedures and to assess for delinquent taxes."
Local administration of this tax is authorized by s. 212.0305(5), F.S., which provides that:
 (a) A county levying a tax under the provisions of this section may be exempt from the requirements of this section that the tax collected be remitted to the Department of Revenue before being returned to the county and that such tax be administered according to the provisions of part I of chapter 212, if the county adopts an ordinance providing for the collection and administration of the tax on a local basis.
 (b) The ordinance shall include provision for, but need not be limited to:
 1. Initial collection of the tax to be made in the same manner as the tax imposed under part I of chapter 212.
 2. Designation of the local official to whom the tax shall be remitted and that official's powers and duties with respect thereto. Tax revenues may be used only in accordance with the provisions of this section.
 3. Requirements respecting the keeping of appropriate books, records, and accounts by those responsible for collecting and administering the tax.
 4. Payment of a dealer's credit as required under part I of chapter 212.
 5. A portion of the tax collected may be retained by the county for costs of administration, but such portion shall not exceed 2 percent of collections.
An examination of the legislative history of s. 212.0305(5), F.S. (added by s. 11, Ch. 87-99, Laws of Florida), reveals no evidence that the issue of the Department of Revenue's auditing function in relation to the act was ever considered.[14]
Therefore, in the absence of any evidence suggesting that another agency audit Convention Development Tax funds when such tax is administered locally pursuant to s. 212.0305(10), F.S., I cannot conclude that the Department of Revenue is relieved of its responsibility to audit such funds pursuant to Part I, Ch. 212, F.S.
Sincerely,
Robert A. Butterworth Attorney General
[1] Section 125.0104(1), F.S.
[2] Section 125.0104(3)(a) and (b), F.S.
[3] Section 125.0104(3)(f), F.S.
[4] Section 125.0104(3)(h), F.S.
[5] Section 125.0104(3)(i), F.S.
[6] Id. And see, s. 125.0104(5), F.S., which prescribes the uses to which tourist development tax revenues may be put.
[7] Compare, s. 212.18, F.S., setting forth methods for administering Part I, Ch. 212, F.S., which does not address auditing functions.
[8] Audio tapes, Florida House of Representatives, April 14, 1987, meeting of the Subcommittee on Tourism to consider HB 453, and April 15, 1987, meeting on HB 453 of House Committee on Tourism. See also, 1987 Fiscal Note, CS/HB 453, Florida House of Representatives, Committee on Finance and Taxation, May 20, 1987; and Staff Analysis, CS/HB 453, Florida House of Representatives Committee on Tourism and Cultural Affairs, June 8, 1987.
[9] See, s. 212.06(2)(j), F.S., defining a "dealer" to include "any person who leases, or grants a license to use, occupy, or enter upon, living quarters, sleeping or housekeeping accommodations in hotels, apartment houses, roominghouses, tourist or trailer camps. . . ."
[10] Section 212.0305(1), F.S.
[11] Section 212.0305(3)(a), F.S.
[12] Id.
[13] Section 212.0305(3)(b), F.S.
[14] See, Florida Senate, Committee on Finance, Taxation and Claims, Statement of Substantial Changes Contained in Committee Substitute for SB 145, May 3, 1987; Florida Senate Appropriations Committee Staff Analysis and Economic Impact Statement on CS/SB 145, May 27, 1987.